Joe Angelo (Bar #268542)
jangelo@gajplaw.com
Gale, Angelo, Johnson, P.C.
2999 Douglas Blvd., Ste. 111
Roseville, CA 95661
916-290-7778 ph
916-282-0771 fax

Attorney for Plaintiff
Cynthia Duncan

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| Cynthia Duncan<br><br>             Plaintiff,<br><br>v.<br><br>Experian Information Solutions, Inc., Equifax Information Services, LLC, TransUnion, LLC, Barclays Bank Delaware, Capital One, N.A., U.S. Bank, N.A., American First Finance, LLC<br><br>             Defendants. | CASE NO. 8:24-cv-01970<br><br>COMPLAINT FOR DAMAGES:<br><br>1. Violation of Fair Credit Reporting Act; |

COMES NOW Plaintiff Cynthia Duncan (hereinafter "Plaintiff"), an individual, based on information and belief, to allege as follows:

**INTRODUCTION**

1. This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), 15 U.S.C. § 1681e(b), 15 U.S.C. § 1681i(a)(2)(A)), 15 U.S.C. § 1681i(a)(4)), and 15 U.S.C. §1681i(a)(5)(A)).

1

2. Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their inaccurate, misleading, or incomplete reporting of Plaintiff's accounts with Barclays Bank Delaware ("Barclays"), Capital One, N.A. ("Capital One"), U.S. Bank, N.A. ("U.S. Bank"), and American First Finance, LLC ("American First").

3. Specifically:

   a. Defendant Barclays continued to report to Experian and Equifax that Plaintiff's account was past-due with an outstanding balance instead of included/discharged in bankruptcy.

   b. Defendant Capital One continued to report to Experian and Equifax that Plaintiff's account was past-due and open rather than reporting that it was included/discharged in bankruptcy.

   c. Citi continued to report to Experian, Equifax, and TransUnion that Plaintiff's account was past-due with an outstanding balance owed rather than updating the reporting to indicate the Citi account was included/discharged in bankruptcy.

   d. Defendant U.S. Bank continued to report to Experian, Equifax, and TransUnion that Plaintiff's account as past-due with an outstanding balance owed rather than updating the reporting to indicate the U.S. Bank account was included/discharged in bankruptcy.

   e. Defendant American First continued to report to TransUnion that Plaintiff's account was past-due with an outstanding balance owed rather than included/discharged in bankruptcy.

4. Defendants Experian, Equifax, and TransUnion, after receiving Plaintiff's disputes, did not suppress or otherwise update the problematic reporting by the Defendants, above.

5. Such reporting is wholly inaccurate, misleading, and adversely impacts Plaintiff's credit worthiness.

6. Plaintiff's credit score has been adversely impacted by the reporting; she has been unable to rebuild her credit score and obtain favorable interest rates as a result of the reporting.

7. Third parties have been exposed to the inaccurate tradelines.

8. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

## JURISDICTION & VENUE

9. Plaintiff re-alleges and incorporates herein by reference the allegations in each and every paragraph above, fully set forth herein.

10. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681

11. The venue is proper pursuant to 28 U.S.C. §1391(b)(1).

## GENERAL ALLEGATIONS

12. Plaintiff alleges that all actions alleged herein by Defendants were done knowingly, intentionally, and in reckless disregard for accurate credit reporting in an attempt to purposefully undermine Plaintiff's attempt to improve her FICO Score.

13. In the alternative Plaintiff alleges that each and every Defendant's actions was the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

**FICO, Inc.**

14. FICO is a leading analytics software company with its principal headquarters located in Montana.

15. FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.

16. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.

17. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

18. Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

19. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.

20. There are 28 FICO Scores that are commonly used by lenders.

21. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies (CRAs).

22. The three largest CRAs are Experian Information Solutions, Inc.; Equifax, Information Services, LLC; and Transunion, LLC.

23. FICO does not control what information is provided in a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.

24. There are five key factors that a FICO Score considers: 1) Payment History; 2) Amount of Debt; 3) Length of Credit History; 4) New Credit; and 5) Credit Mix.

25. Each of the five factors is weighed differently by FICO.

26. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.

27. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score.

28. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently they occurred, and how many delinquent accounts exist.

29. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

30. FICO Scores are entirely dependent upon information provided by data furnishers to credit reporting agencies.

31. A consumer's FICO score is negatively impacted when an adverse authorized user account is reported.

**Metro 2**

32. The Consumer Data Industry Association is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.

33. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt. Specifically, Metro 2 format was designed to allow reporting of the most accurate and complete information on consumer's credit history.

34. The CDIA's Metro 2 format is the credit reporting industry standard for accurate credit reporting.
35. The credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.
36. The CDIA is *the* expert on accurate credit reporting. In support of her allegations Plaintiff avers the following:
    a. The CDIA offers a FCRA certificate program for all CRAs.
    b. The CDIA offers a FCRA awareness program for all CRAs.
    c. The CDIA offers a FCRA Certificate program for DFs.
    d. The CDIA offers a FCRA awareness program for DFs.
    e. The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.
    f. The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and Transunion.
    g. The CDIA developed a credit reporting resource guide for accurately reporting credit.
37. The CDIA's Metro 2 is accepted by all CRAs.
38. The credit reporting accepted industry standards for reporting Metro 2 accurately are found in the CDIA's credit reporting resource guide (CRRG).
39. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.
40. The three main credit bureaus helped draft the CRRG.
41. Even if a buyer is ready willing and able to pay for the CRRG, the CDIA will NOT grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.

42. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.

43. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.

44. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower a consumer will be considered a higher credit risk resulting in less favorable lending terms.

### Consumer Information Indicator

45. When a consumer files for bankruptcy protection certain credit reporting industry standards exist.

46. Certain Metro 2 data is regularly expected and calculated by FICO when determining a consumer's credit worthiness.

47. The Consumer Information Indicator (CII) is a critical field in the Metro 2 Format that indicates a special condition that applies to a specific consumer.

48. Under Metro 2 the CII must be reported only on the consumer to whom the information applies.

49. It is the credit reporting industry standard to report a very specific CII upon the filing of a consumer bankruptcy.

50. In the consumer bankruptcy context CII Metro 2 Code "A" denotes that a petition for Chapter 7 has been filed, is active, but no discharge has been entered.

51. The CII Metro 2 Code "Z" indicates that a bankruptcy petition has been filed but the chapter is undesignated/unknown.

52. The CII Metro 2 Code "E" denotes that a Chapter 7 bankruptcy has been discharged.

53. The CII field is a critical field for consumers and directly relates to and impacts a consumer's credit worthiness.
54. Failure to update the CII to a "E" on discharged debts results in it appearing that a consumer, like Plaintiff, still owes on the account that was otherwise included and discharged in a bankruptcy.
55. The result lowers a consumer's credit score and makes a consumer appear much less credit worthy.

### Plaintiff's Bankruptcy

56. Plaintiff filed for chapter 7 bankruptcy protection on December 14, 2023.
57. Plaintiff received her chapter 7 discharge on March 25, 2024.
58. Defendants Barclays, Capital One, U.S. Bank, and American First all received notice of Plaintiff's bankruptcy filing and entry of her bankruptcy discharge.
59. Defendants Experian, Equifax, and TransUnion all were aware of Plaintiff's chapter 7 bankruptcy filing and entry of discharge based on their own subscription to various public records databases.

### Plaintiff's Credit Report

60. After Plaintiff completed her bankruptcy and received her discharge Plaintiff ordered a credit report to confirm er creditors properly updated the accounts to reflect the bankruptcy discharge.
61. While most of her creditors updated the accounts to indicate the bankruptcy discharge, Plaintiff noticed various delinquent tradelines from some of her unsecured creditors on her post-discharge credit report from Experian, Equifax, and TransUnion.
62. Specifically, Plaintiff noticed the following:
    a. Barclays was reporting at least $406 was still owed and past-due.
    b. Capital One was reporting at least $464 was still owed and past-due.

c. Citi was reporting at least $2,796 was still owed and past-due.

d. U.S. Bank was reporting at lest $1,272 was still owed and past-due.

e. American First was reporting that at least $3,735 was still owed and past-due.

63. In response, Plaintiff disputed the furnisher tradelines identified in paragraph 62 in May of 2024, indicating that the accounts should not be open with a balance and past-due balance because the accounts were included and discharged in bankruptcy.

64. Plaintiff's dispute letters further indicated that the accounts should be updated to reflect the CII "E" as all of the accounts were included/discharged in her bankruptcy proceeding.

65. Plaintiff believes that the disputed information was transmitted to Barclays, Capital One, U.S. Bank, and American First by the credit bureaus, which would prompt Barclays, Capital One, U.S. Bank, and American First to perform an investigation and respond to Plaintiff's dispute.

66. In late June of 2024 Plaintiff ordered supplemental credit reports to verify that the disputed accounts were updated in response to her dispute.

67. However, the disputed Barclays, Capital One, U.S. Bank, and American First accounts were not updated and the inaccurate, incomplete, and materially misleading reporting remained the same.

**Damages**

68. As a result of the incorrect reporting, Plaintiff has suffered economic loss, diminished credit, and emotional harm.

69. Plaintiff has been denied credit, including a denial of a secured credit card, as a result of the past-due balances appearing on her credit reports.

70. In addition, Plaintiff's fresh start has been irreparably harmed and continues to be harmed by Barclays, Capital One, U.S. Bank, and American First's

reporting as that reporting has been disclosed and disseminated to various third-party lenders.

71. Until Barclays, Capital One, U.S. Bank, and American First's reporting has been properly updated Plaintiff continues to appear a severe credit risk.

72. The actions of Experian, Equifax, TransUnion, Barclays, Capital One, U.S. Bank, and American First as alleged herein are acts in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681.

## FIRST CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Defendants)

**Experian, Equifax, and TransUnion – Failure to Assure Credit Reporting Accuracy.**

73. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

74. Experian, Equifax, and TransUnion violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.

75. Had Experian, Equifax, and TransUnion maintained reasonable procedures to assure maximum accuracy Experian, Equifax, and TransUnion would never have allowed Barclays, Capital One, Citi, U.S. Bank, and American First to report the account as described herein.

76. As a result of Experian, Equifax, and TransUnion's violation of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: diminished credit, denial of credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

77. Experian, Equifax, and TransUnion all allowed the inaccurate information reported by Barclays, Capital One, Citi, U.S. Bank, and American First to be transmitted to various third-party lenders, further damaging Plaintiff's credit.

78. The violations described herein by Experian, Equifax, and TransUnion were willful, specifically the Credit Bureaus have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.

79. Instead of correcting Barclays, Capital One, Citi, U.S. Bank, and American First's inaccurate reporting Experian, Equifax, and TransUnion allowed the inaccurate and misleading information to continue to be reported and disseminated to third parties.

**Willfulness**

80. The violations described herein by Experian, Equifax, and TransUnion were willful, specifically the Credit Bureaus have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.

81. In 2012 the FTC reported that 1 in 5 consumer credit reports contains a material error.

82. Such a finding should shock the conscience.

83. When those errors are disputed Experian, Equifax, and TransUnion intentionally send consumer disputes to employees who do not live within the continental United States.

84. This is intentionally done to hide and or subvert a consumer's ability to confront individuals directly responsible for approving accurate reporting.

85. Such a policy also inevitably leads to disputes going unresolved as these employees for Defendants Experian, Equifax, and TransUnion receive little to know training concerning how to accurately report consumer debt.

86. Instead, these employees are simply instructed to parrot whatever information a data furnisher provides regardless of whether or not that

information is accurate. *See Saez v. Trans Union,* LLC, 621 F.Supp. 2d 1074, 1083, 1088 (D.Or. 2007); *Grigoryan v. Experian Info. Sols*., Inc., 84 F. Supp. 3d 1044, 1091 (C.D. Cal. 2014); *Haykuhi Avetisyan v. Experian Info Sols*., No. CV 14-05276-AB (ASX)

87. Experian, Equifax, and TransUnion employees are regularly expected to review and approve over 90 disputes per day rendering less than five minutes to review, investigate, and respond to each dispute received.

88. Experian, Equifax, and TransUnion has intentionally set up this system in order to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

89. Experian, Equifax, and TransUnion all allowed Barclays, Capital One, Citi, U.S. Bank, and American First to report its accounts with inaccurate information despite specifically being told in the dispute letter why the information Experian, Equifax, and TransUnion was reporting was incorrect.

90. Despite Experian, Equifax, and TransUnion having actual knowledge of Plaintiff's account status (such as the discharge), Experian, Equifax, and TransUnion, all continue to allow Barclays, Capital One, Citi, U.S. Bank, and American First to report the accounts as past-due with an outstanding balance and with no bankruptcy notation.

91. Consequently, Defendants Experian, Equifax, and TransUnion are liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

92. In the alternative, Experian, Equifax, and TransUnion were at least negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

93. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**SECOND CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b))

Against Defendants Barclays, Capital One, Citi, U.S. Bank, and American First)

**Barclays, Capital One, Citi, U.S. Bank, and American First – Failure to Reinvestigate.**

94. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

95. 15 U.S.C. §§ 1681s-2(b) and 1681i-(a)1 prohibits furnishers from providing any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate or misleading and requires a furnisher to update and or correct inaccurate information after being notified by a consumer reporting agency of a dispute by a consumer.

96. Defendants Barclays, Capital One, Citi, U.S. Bank, and American First violated section 1681s-2(b) by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate account information.

97. The Experian, Equifax, and TransUnion provided notice to Barclays, Capital One, Citi, U.S. Bank, and American First that Plaintiff was disputing the inaccurate and misleading information, but Barclays, Capital One, Citi, U.S. Bank, and American First failed to conduct a reasonable investigation of the information.

98. Based on Plaintiff's dispute, Barclays, Capital One, Citi, U.S. Bank, and American First should have known its account was included in Plaintiff's Chapter 7 discharge.

99. The most basic investigation would include a simple review of well-established credit reporting industry standards.

100. Plaintiff alleges Barclays, Capital One, Citi, U.S. Bank, and American First did not review well established industry standards for credit reporting.

101. If Barclays, Capital One, U.S. Bank, and American First had reviewed such standards Barclays, Capital One, Citi, U.S. Bank, and American First would have seen its reporting was not in compliance and consequently inaccurate and or incomplete.

102. Such an investigation would be unreasonable.

103. Plaintiff also alleges that Barclays, Capital One, Citi, U.S. Bank, and American First did not investigate whether Plaintiff filed for bankruptcy and whether a discharge was entered.

104. The lack of investigation is unreasonable.

105. Plaintiff further alleges that Barclays, Capital One, U.S. Bank, and American First has not properly trained those directly investigating disputes on Metro 2 generally or credit reporting industry standards and as such have developed reckless policies and procedures.

**Experian, Equifax, and TransUnion – Failure to Reinvestigate Disputed Information.**

106. Plaintiff re-alleges and incorporate herein the allegations in each and every paragraph above as though fully set forth herein.

107. After Plaintiff disputed the accounts mentioned above, Experian, Equifax, and TransUnion were required to conduct a reasonable investigation and to delete any information that was not accurate under 15 U.S.C. § 1681i-(a)1.

108. Experian, Equifax, and TransUnion all failed to conduct a reasonable investigation and failed to correct the misleading and or inaccurate statements on the account within the statutory time frame or at all.

109. Experian, Equifax, and TransUnion could not have possibly done any type of reasonable investigation into this matter as Plaintiff explicitly explained that the Barclays, Capital One, U.S. Bank, and American First

account should be reporting as included/discharged in bankruptcy rather than past-due with a balance owed.

110. Plaintiffs allege that Experian, Equifax, and TransUnion have its own independent duty to conduct a reasonable investigation 15 U.S.C. §1681i-(a)1.

111. Experian, Equifax, and TransUnion are not passive entities bound to report whatever information furnishers such as Barclays, Capital One, U.S. Bank, and American First provide.

112. Given the aforementioned, Plaintiff alleges that Experian, Equifax, and TransUnion can and do suppress inaccurate information from being reported when data-furnishers provide inaccurate information.

113. Experian, Equifax, and TransUnion can and do instruct data-furnishers on how to properly report certain accounts from time to time upon request from the furnisher.

114. Experian, Equifax, and TransUnion failed to conduct a reasonable investigation because any basic investigation would have included a review of Plaintiff's dispute letters.

115. Experian, Equifax, and TransUnion intentionally, willfully or with reckless disregard for Plaintiff's accuracy did no investigation whatsoever given that Experian, Equifax, and TransUnion's general policy is to simply parrot whatever information a data furnisher sends.

116. Such policy and procedure inherently leads to inaccurate information being reported and therefore such an investigation is wholly unreasonably and reckless i.e. willful.

### THIRD CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
Against Defendants Experian, Equifax, TransUnion)

**Experian, Equifax, and TransUnion – Failure to Review and Consider All Relevant Information.**

117. Plaintiff realleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

118. Experian, Equifax, and TransUnion violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

119. As a result of Experian, Equifax, and TransUnion's violation of 15 U.S.C. § 1681i(a)(4), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

120. The violations by Experian, Equifax, and TransUnion were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

121. In the alternative Experian, Equifax, and TransUnion were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

122. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

### FOURTH CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A))
Against Defendants Experian, Equifax, TransUnion)

**Experian, Equifax, and TransUnion – Failure to Delete Disputed and Inaccurate Information.**

123. Plaintiff re-alleges and incorporates herein the allegations in each and every paragraph above as though fully set forth herein.

124. Experian, Equifax, and TransUnion violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from

Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

125. As a result of Experian, Equifax, and TransUnion's violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

126. The violations by Experian, Equifax, and TransUnion were willful, rendering it individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

127. In the alternative, Experian, Equifax, and TransUnion were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

128. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian, Equifax, and TransUnion in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rules of Civil Procedure 38, Plaintiff hereby demands a trial by jury for all issues of fact triable by jury.

Wherefore, Plaintiff prays for judgment as hereinafter set forth.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n
2. Award punitive damages in order to deter further unlawful conduct pursuant to 15 U.S.C. § 1681n;
3. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o;
4. For determination by the Court that Defendants' policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and

5. For determination by the Court that Defendants' policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

                                          Gale, Angelo, & Johnson, P.C.

Dated: September 12, 2024             */s/ Joe Angelo*
                                                    Joe Angelo
                                                    Attorney for Plaintiff